UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LINDA CROSSLAND | CIVIL ACTION |
| VERSUS | NO. 20-3470 |
| HUNTINGTON INGALLS, INC., ET AL. | SECTION "R" (2) |

## ORDER AND REASONS

Before the Court is plaintiff Linda Crossland's motion for partial summary judgment as to the government immunity defenses advanced by defendants Huntington Ingalls Incorporated ("Avondale") and Hopeman Brothers, Inc. ("Hopeman").[1]  Avondale and Hopeman oppose plaintiff's motion.[2]  For the following reasons, the Court GRANTS plaintiff's motion.

## I.    BACKGROUND

This case arises from plaintiff's alleged exposure to asbestos.  Plaintiff contends that her husband, who constructed and repaired various vessels at Avondale's shipyards in the early 1970s, unwittingly brought asbestos dust

---

[1]    R. Doc. 197.
[2]    R. Doc. 206; R. Doc. 208.

into the family home on his clothing.[3]  She alleges that her exposure to asbestos dust caused her to develop mesothelioma, with which she was diagnosed in 2020.[4]

Plaintiff filed a petition for damages in the Civil District Court for the Parish of Orleans against dozens of employers, premises owners, contractors, suppliers, manufacturers, and professional vendors that were allegedly involved with her asbestos exposures, including Avondale and Hopeman, a joiner responsible for installing asbestos-containing bulkheads on vessels on which plaintiff's husband allegedly worked.[5]  In her petition for damages, plaintiff alleged that defendants negligently failed to warn her husband about the hazards of asbestos and failed to provide him "with safe premises in order to protect [plaintiff's] life, health, safety, and welfare."[6] She also brought premises liability claims against the defendants she

---

[3]     R. Doc. 1-2 at 4 ¶ 4.  Plaintiff initially also brought claims based on exposures through her own work at Avondale, asbestos fibers floating from Avondale into her neighborhood, asbestos-containing concrete delivered to her home, and asbestos dust from her father's clothing while he was allegedly employed by Avondale in the 1950s.  R. Doc. 1-2 at 3-4 ¶ 4.  She dismissed the claims premised on exposure through her own employment at Avondale and from asbestos fibers floating into her neighborhood.  R. Doc. 154.  And in her motion for summary judgment, she mentions only the claims premised on her alleged exposure from her husband's clothing.  *See* R. Doc. 197.

[4]     R. Doc. 1-2 at 4 ¶ 8.

[5]     R. Doc. 1-2.

[6]     R. Doc. 1-2 at 5 ¶ 12.

classifies as employers, premises owners, and contractors,[7] as well as products liability claims against the defendants she classifies as suppliers, manufacturers, and professional vendors.[8]

Avondale removed the action to federal court.[9]  In its notice of removal, Avondale contended that removal was proper because "at all material times, [it was] acting under an officer of the United States."[10]   In particular, Avondale argued that because the vessels on which plaintiff's husband worked were manufactured pursuant to contracts with the federal government, it was entitled to "government contractor immunity established by *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988)," and "the federal defense of derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross. Construction Co.*, 309 U.S. 18 (1940)."[11]   In its answer, Hopeman likewise alleged that plaintiff's claims are "barred by the government contractor defense."[12]

In the instant motion, plaintiff argues that she is entitled to summary judgment on the issue of whether defendants are entitled to immunity for

---

[7]      *Id.* at 6-7 ¶¶ 16-20.
[8]      *Id.* at 7-8 ¶¶ 21-22.
[9]      R. Doc. 1.
[10]     *Id.* at 1.
[11]     *Id.* at 8-9 ¶¶ 21-23.
[12]     R. Doc. 13-5 at 6 ¶ X.

her claims for failure to warn or otherwise protect her husband from asbestos exposure by virtue of their status as government contractors.[13]

Avondale and Hopeman oppose the motion. They contend that they are entitled to immunity under both *Boyle* and *Yearsley* and that, at a minimum, material facts exist as to whether the elements of their immunity defenses are satisfied, which precludes a grant of summary judgment for plaintiff.[14]

The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness*

---

13   R. Doc. 197-1 at 1-2.
14   R. Doc. 206 at 2; R. Doc. 208 at 20.

*Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).  "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.   DISCUSSION

The Court first examines defendants' entitlement to immunity to under the doctrine announced in *Boyle v. United Techs. Corp.*, 487 U.S. 500

(1988).   It then turns to their claim to immunity under the doctrine established in *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940).

### A.        Immunity Under the *Boyle* Doctrine

Defendants' claim of immunity depends on the scope of protection available to government contractors under *Boyle*.   *Boyle* involved a claim predicated on a defective helicopter door that was designed by a contractor pursuant to the government's design specifications.   *Boyle*, 487 U.S. at 503. The Supreme Court held that under certain circumstances, a contractor is entitled to immunity from state law tort claims for product design defects. Otherwise, the Court reasoned, "[t]he imposition of liability on Government contractors will directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise its price."   *Id.* at 507.

In order for a defendant to "claim the government contractor defense" for design defect claims, "(1) the government must have approved 'reasonably precise' specifications; (2) the equipment must have conformed to those specifications; and (3) the supplier/contractor must have warned of those equipment dangers that were known to the supplier/contractor, but not to the government."   *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 435 (5th Cir. 2000) (citing *Boyle*, 487 U.S. at 512).   The first two requirements "assure

that the design feature in question was considered by a Government officer, and not merely by the contractor itself." *Boyle*, 487 U.S. at 512. The third requirement "is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability." *Id.* "Stripped to its essentials," the government contractor defense in *Boyle* is "fundamentally a claim that the [g]overnment made me do it." *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 465 (5th Cir. 2010) (internal quotation marks omitted).

In the context of failure-to-warn claims, the Fifth Circuit has applied a "modified *Boyle* test." *Kerstetter*, 210 F.3d at 438. "If a plaintiff brings a failure-to-warn case alleging a failure to conform to state law requirements, and the defendant establishes that the federal government was involved in the decision to give (or not to give) a warning and that the defendant complied with the federal government's provisions, there necessarily exists a conflict between state law and federal policy in this area." *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 353 (5th Cir. 2010). Accordingly, under the modified *Boyle* test, government contractors are immune from liability for failure to warn only when "(1) the United States exercised discretion and approved the warnings; (2) the contractor provided a warning that

conformed to the approved warnings; and (3) the contractor warned about dangers it knew, but the government did not." *Kerstetter*, 210 F.3d at 438.

Plaintiff contends that she is entitled to summary judgment on the issue of defendants' entitlement to *Boyle* immunity because defendants have identified no evidence indicating that the government was involved in the decision of whether to issue asbestos-related warnings.[15] She asserts that to the contrary, the record shows that Avondale had discretion to warn its employees about the dangers of asbestos, and workplace safety was Avondale's responsibility, not the government's.[16]

Avondale argues it is entitled to immunity under *Boyle* because the government exercised discretion when it considered the safety risks that employees faced  and issued only those warnings it thought were necessary. In support of its argument, Avondale notes that the government determined the maximum threshold of asbestos-dust levels employees could be exposed to before protective measures were required.[17]  It contends that if employees were exposed in excess of that threshold, the government required Avondale to issue safety warnings.[18]  In support of this proposition, Avondale cites to

---

[15]   R. Doc. 197-1 at 14-15.

[16]   *Id.* at 8, 4.

[17]   R. Doc. 258 at 12.

[18]   *Id.*

the deposition testimony of its 30(b)(6) deponent, who testified that the "regulation itself" required Avondale to issue warnings under such circumstances.[19]  Avondale thus concludes that "[t]he government exercised its discretion and concluded that exposure to asbestos dust warranted warnings only in certain instances."[20]   But Avondale cites to no statute, regulation, or contract provision that requires the issuance of such warnings, and its witness did not identify the content of any warnings the government required.  The Walsh-Healey Act, which is incorporated by reference into the contracts, states the maximum "[t]hreshold limit values" for asbestos dust and describes a number of safety measures contractors must take, including requiring the use of protective gear if the threshold is to be exceeded, but it does not require that contractors issue warnings about asbestos-related risks to their employees.[21]

Avondale also points out that the government required the issuance of warnings related to radiation hazards and flammable liquids.[22]  It argues that this further demonstrates that the government expressly contemplated which, if any, warnings had to be issued, and that the government

---

[19]   R. Doc. 258-1 at 22 (Joyce Dep. 73:4-13).
[20]   R. Doc. 258 at 12.
[21]   R. Doc. 206-11 at 31.
[22]   R. Doc. 258 at 12; R. Doc. 206-11 at 10.

affirmatively issued the warnings it deemed appropriate.  Finally, Avondale argues that its contracts with the government incorporated Public Law 85-742, which it asserts required the Secretary of Labor to set safety standards and regulations, and to train employers and employees in safe practices and procedures.[23]

Plaintiff contends that the existence of these minimum safety requirements does not give rise to immunity under the *Boyle* doctrine because "there is no evidence or language in the contracts which constrained Avondale in any way from issuing warning[s] to its employees."[24]  She argues that because the government did not prevent Avondale from issuing warnings to employees, it cannot claim immunity under *Boyle* for its failure to do so.

The circuit courts are not in harmony about whether the government must restrict a contractor from issuing warnings in order for *Boyle* immunity to apply.  Some circuits take a restrictive approach to the availability of *Boyle* immunity.  For example, in *In re Joint Eastern and Southern District of New*

---

[23]   *Id.* at 14.  Avondale does not identify where the contracts incorporate this law; whether the Secretary of Labor did, in fact, set safety standards and regulations pursuant to the law; whether any such regulations were in place when plaintiff's husband worked at Avondale; or whether any such standards or regulations related to asbestos-related hazards.

[24]   R. Doc. 250 at 3.

*York Asbestos Litigation*, the defendant, a contractor who was required by the government to use asbestos, argued that it was not liable for failing to issue warnings because the government made a conscious decision not to warn those working in shipyards of the dangers they faced from asbestos. 897 F.2d 626, 631 (2d Cir. 1990).   The Second Circuit rejected the contractor's argument.   It explained that "[a]ccepted as true, [the contractor's] allegations prove only that the Government made a discretionary decision not to warn those working with asbestos . . . of the hazards of asbestos.   These allegations do not at all indicate that the Government controlled or limited the ability of contractors like [defendant] themselves to warn those who would come into contact with its product." *Id.* Because the government did not "prohibit[]" the contractor "from issuing warnings of its own," nor did the contract "place a limit upon any additional information a manufacturer may have wished to convey to those using the product," *Boyle* immunity was unavailable.  *Id.* at 633.

The Ninth and Eleventh Circuits have taken a similar approach.  In *In re Hawaii Federal Asbestos Cases*, for example, the Ninth Circuit held that *Boyle* applies to failure-to-warn claims "only when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military

contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion." 960 F.2d 806, 813 (9th Cir. 1992) (quoting *In re Joint Eastern and Southern District of New York Asbestos Litig.*, 897 F.2d at 632). The Eleventh Circuit has similarly held that the defense does not apply when "the defendant could have complied with both its state tort law duty and its [government] contract." *Dorse v. Eagle-Picher Indus., Inc.*, 898 F.2d 1487, 14989-90 (11th Cir. 1990).

Other circuits take a more permissive approach to the availability of immunity under *Boyle*. For example, in *Sawyer v. Foster Wheeler LLC*, the Fourth Circuit considered a claim of *Boyle* immunity in the context of removal under 28 U.S.C. § 1442(a)(1). 860 F.3d 249, 251 (4th Cir. 2017). In that case, the plaintiff sued the manufacturer of boilers that he assembled for use on Navy vessels for failure to warn about the dangers of the asbestos contained in the boilers. *Id.* at 251-52. The district court rejected the contractor's claim to *Boyle* immunity because "the warnings [the contractor] could have given to employees in the workplace were not prohibited by" the government. *Id.* at 257. On appeal, the Fourth Circuit admonished the district court for adding that requirement to the *Boyle* analysis. It noted that "[t]he district court's clear implication is that, unless the government explicitly regulated all possible warnings, [a contractor] could not have a

colorable federal defense of immunity," which "overlooks the fact that, in specifying some warnings in response to the known dangers of asbestos, the government necessarily exercised discretion in not requiring additional warnings." *Id.* The Fourth Circuit thus held that "the government need not prohibit the contractor from providing additional warnings" for a contractor to be immune under *Boyle*. *Id.* at 256.

The Sixth Circuit has reached a similar conclusion. In *Tate v. Boeing Helicopters*, the court held that "[w]here the government goes beyond approval and actually determines for itself the warnings to be provided, the contractor has surely satisfied the first condition [of the modified *Boyle* test] because the government exercised its discretion." 55 F.3d 1150, 1157 (6th Cir. 1995). The court acknowledged that some circuits require contractors to show that the government either dictated the content of warnings or prohibited the contractor from issuing further warnings, but ultimately rejected this approach, noting that "[g]overnment *discretion* is required, not dictation or prohibition of warnings." *Id.* (emphasis in original).

Several courts in this district have adopted the restrictive approach to *Boyle* immunity when assessing claims like plaintiff's. For example, in *Broussard v. Huntington Ingalls, Inc.*, the court granted summary judgment to the plaintiff on the issue of Avondale's entitlement to *Boyle* immunity,

because "it appears that nothing prevented Avondale from satisfying the terms of its Navy contracts and meeting its obligations under Louisiana law, without doing violence to either." No. 20-836, 2021 WL 5448795, at *3 (E.D. La. Nov. 22, 2021). Similarly, in *Sheppard v. Northrop Grumman Systems Corp.*, the court held that the defendant lacked a colorable *Boyle* defense for purposes of removal, because "no government regulation or contract specification prevented [the contractors] from providing safety warnings," thereby permitting the contractors to "comply with both their contractual obligations and their state-prescribed duty of care." No. 07-2208, 2007 WL 1550992, at *6 (E.D. La. May 24, 2007).

The Fifth Circuit has not explicitly required a contractor to demonstrate that it was prevented by the government from providing additional warnings in order to enjoy immunity under the *Boyle* doctrine. To the contrary, several cases suggest the Fifth Circuit takes a more permissive approach to the availability of *Boyle* immunity.

For example, in *Kerstetter*, the family of a Navy instructor sued the manufacturer of a pilot restraint system after the instructor died when he was inadvertently ejected from his aircraft. *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 433-34 (5th Cir. 2000). The family brought claims for design defect and failure to warn, and the manufacturer argued it was entitled to

immunity under *Boyle*.  Regarding the design defect claim, the Fifth Circuit rejected the plaintiffs' argument that the manufacturer was not entitled to immunity because it could have designed a safer pilot restraint system without violating the government contract.  *Id.* at 437.  The Fifth Circuit further held that the manufacturer was entitled to immunity on the failure-to-warn claim because even though the government did not require the contractor to issue a warning about the specific hazard the deceased faced—inadvertent seat release—the government nevertheless "exercised discretion in approving [other] warnings in the flight manual."  *Id.* at 438.  The court did not require an additional showing that the manufacturer was prohibited from issuing further warnings.

The Fifth Circuit reached a similar conclusion ten years later in *Jowers*. 617 F.3d at 353.  In that case, the district court instructed the jury that in order for the contractor to have immunity to a failure-to-warn claim, the contractor must show that "the United States Government had an identifiable interest or policy in the existence or methods of warnings on welding products," and that "there was a significant conflict between this Federal interest or policy and the requirements of [state] law regarding the provision of adequate warnings."  *Id.* at 352.  The contractor argued "this added element erroneously required it to show physical impossibility to

comply with both the state law standard of care and the federal government's specifications in order to prevail on the government contractor defense." *Id.* The Fifth Circuit agreed, holding that "[i]f a plaintiff brings a failure-to-warn case alleging a failure to conform to state law requirements, and the defendant subsequently establishes that the federal government was involved in the decision to give (or not to give) a warning and that the defendant complied with the federal government's provisions, there necessarily exists a conflict between state law and federal policy in this area." *Id.* at 535. The contractor was not required to also prove that the government prohibited it from issuing additional warnings. *Id.*

Even under the more permissive approach to *Boyle* immunity, the Court finds that defendants have failed to establish their entitlement to immunity. That the government required warnings about radiation and flammable liquid risks, and provided a maximum threshold for asbestos exposure, does not indicate that the government exercised meaningful discretion in the decision of whether to issue warnings related to asbestos. Avondale argues the government required warnings about asbestos in the event employees were exposed in excess of the maximum thresholds, but there is no evidence of the content of any warnings required by the government, or any contract provision, regulation, statute, or document that

required warnings.  The 30(b)(6) witness testified that warnings were required by the "regulation itself," but there is no provision in the Walsh-Healey Act or any regulations that required such warnings.  The witness apparently conflated the requirement for certain protective measures if exposure limits were exceeded with a requirement for warnings.  Indeed, Avondale concedes that "no [asbestos] warning requirement existed [under Walsh-Healey] with respect to the handling of asbestos," and it cites to no other source for this requirement.[25]  Unlike in *Kerstetter*, where the government's exercise of discretion regarding the issuance of warnings was made clear by evidence that the government affirmatively approved the contractor's warnings, 210 F.3d at 438, here, the government appears to have been uninvolved in the decision of which, if any, warnings would be issued to Avondale's employees about asbestos.

Further, as plaintiff notes, Felix Albert, a Navy inspector who worked at Avondale during the same years as plaintiff's husband, testified that "[o]n the job safety during the construction of vessels for the United States government was the responsibility of Avondale Shipyard's safety department."[26]  This evidence indicates that, contrary to Avondale's

---

[25]   R. Doc. 206 at 5.
[26]   R. Doc. 197-12 at 2.

assertions otherwise, the government did not exercise meaningful discretion in the area of asbestos warnings.

The Court also does not accept Avondale's conclusion that the government's decision to work with Avondale even though Avondale did not issue warnings to workers about asbestos gives rise to immunity under *Boyle*.[27]  The Fifth Circuit has made clear that if the government merely "rubber-stamp[s]" the contractor's decisions, this is not enough to entitle a contractor to immunity under *Boyle*. *Jowers*, 617 F.3d at 353.  Avondale also emphasizes that the government was closely involved with designing and overseeing the construction of the asbestos-containing vessels,[28] but that does not demonstrate that it was involved with the issuance of warnings to employees about the risks of asbestos.

Accordingly, the Court finds that defendants have not met their burden of identifying evidence creating a genuine dispute of material fact as to whether "the federal government had [a] hand in" the decision of whether to issue warnings related to asbestos.  *Adams v. Eagle*, 2022 WL 4016749, at *7.  Rather, the record indicates that "no governmental discretion was

---

[27]    R. Doc. 255-2 at 15.
[28]    R. Doc. 206 at 4-6.

exercised." *Id.*  The Court thus holds that defendants are not entitled to *Boyle* immunity for plaintiff's failure-to-warn claims.

The same is true for plaintiff's claims premised on defendants' failure to implement additional safety measures to prevent the spread of asbestos.[29] The safety and health standards of the Walsh-Healey Act provide that "[n]o employee shall be exposed" to asbestos in excess of a specified limit, "unless he is protected therefrom by respiratory equipment approved for the purpose by the United States Bureau of Mines of the United States Department of the Interior and operated in accordance with the recommendations of its manufacturer."[30]  Further, Avondale has submitted testimony that the Navy "had a team of people throughout the shipyard inspecting every single part of the work performed," including "for safety,"[31] and that some of these safety

---

[29]   It is unclear, on the face of plaintiff's complaint, whether these theories support separate claims for recovery.  R. Doc. 1-2 at 5 ¶ 12 ("Defendants . . . were responsible to provide Petitioner with warnings concerning hazardous conditions at their sites or relating to their hazardous ACMs or generally to provide Petitioner's husband with safe premises in order to protect life, health, safety, and welfare of Petitioner[.]").

[30]   R. Doc. 206-11 at 31.  Plaintiff submits a version of the Walsh-Healey Act's safety and health standards that appears to be from 1951.  But that version, too, provides for a number of "[c]ontrol measures" that must be implemented in the event employees' exposure to asbestos exceeds the maximum limit.  R. Doc. 214-1 at 28.

[31]   R. Doc. 255-3 at 22-23 (Danny Joyce Dep. 73:21-74:2); R. Doc. 12-7 at 3 ¶ 8 (Edward Blanchard Affidavit).

inspections focused on Avondale's compliance with the Walsh-Healey Act.[32]
The specifications in the Walsh-Healey Act appear to be reasonably precise,
but the Act includes a catch-all provision that it expresses only "minimum
safety and health standards," and that "[c]ompliance with the standards
expressed [herein] will not relieve anyone from any obligation to comply
with any more strict standard stemming from any other source whatsoever."
R. Doc. 206-11 at 5-6.  While it is true that as a general matter, a contractor
may be immune under *Boyle* if it followed reasonably precise government
specifications, even if it could have performed the contract in a safer way, *see
Kerstetter*, 210 F.3d at 437, this principle does not apply here, as the
government expressly stated that the safety requirements it specified are
minimum standards that do not relieve contractors of from their obligation
to comply with stricter standards.   Accordingly, the Court holds that
defendants' compliance with the minimum health and safety requirements
of the Walsh-Healey Act does not give rise to immunity under the *Boyle*
doctrine.  *See Adams*, 2022 WL 4016749, at *8-9.[33]

The Court must observe that the conclusion reached in this order is not
free from doubt.  This is because of *Latiolais v. Huntington Ingalls, Inc.*, a

---

[32]    R. Doc. 12-10 at 7 (Peter Territo Dep. 39:3-19).
[33]    Plaintiff also argues that because defendants used commercially
       available asbestos-containing products in the vessels, they are exempt

recent *en banc* decision by the Fifth Circuit.  951 F.3d 286 (5th Cir. 2020).

There, much like here, the plaintiff brought claims against Avondale for

failure to warn him about asbestos hazards and failure to provide adequate

safety equipment.  *Id.* at 290.  Avondale removed the case to federal court

under 28 U.S.C. 1442(a)(1).  *Id.*  On appeal of the district court's remand

order, the Fifth Circuit discussed each of the requirements for removal under

section 1442(a)(1), including whether Avondale presented a colorable federal

immunity defense.  In stating the requirements for immunity, the court

reiterated the *Boyle* test it traditionally applied in design defect cases: "(1)

the United States approved reasonably precise specifications; (2) the

equipment conformed to those specifications; and (3) the supplier warned

the United States abut the dangers in the use of the equipment that were

known to the supplier but not to the United States."  *Id.*  The court went on

to hold that Avondale's claim to *Boyle* immunity was not frivolous because it

offered evidence that "the government approved reasonably precise

specifications about the installation of asbestos," including evidence that

"the Navy generally required Avondale to install asbestos and to comply with

certain related safety practices;" that "Avondale complied with those

_____

from immunity under *Boyle*.  Because the Court finds that defendants
failed to establish their entitlement to *Boyle* immunity, it need not
reach the parties' arguments on this issue.

specifications;" and "that the federal government knew more than Avondale knew about asbestos-related hazards and related safety measures." *Id.* at 297-98.

Although *Latiolais* considered *Boyle* in the context of removal rather than assessing the defense on the merits, there is no reason the elements of the *Boyle* defense would be different in these contexts, even if the removal standard requires only that the test be supported by a colorable showing. The court noted that the *Boyle* "government contractor defense does not necessarily apply only to claims labeled 'design defect;'" rather, whether the defense "will apply to a particular claim depends *only* upon whether Boyle's three conditions are met with respect to the *particular product feature* upon which the claim is based." *Id.* at 297 (quoting *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 801 (5th Cir. 1993)) (emphasis in original). *Latiolais* thus suggests that the proper test for failure-to-warn claims arising from asbestos installed under government contracts is the same as the test used in the design defect context. If that were the case, it is unclear that the plaintiff is entitled to summary judgment. Nevertheless, the Fifth Circuit in *Latiolais* did not expressly overrule its earlier line of cases analyzing the modified *Boyle* test, including *Kerstetter* and *Jowers*. The Court will not presume that the Fifth Circuit intended to overrule these cases without expressly doing so.

Accordingly, the Court holds that, under the traditional failure-to-warn test applied in *Kerstetter* and *Jowers*, defendants have failed to demonstrate they entitled to a defense under *Boyle*.

### B.        Immunity under the *Yearsley* Doctrine

Defendants contend they are independently entitled to immunity under the *Yearsley* doctrine.[34]  In *Yearsley*, the plaintiffs sought to recover damages for erosion of their land that resulted from the defendant's performance of a government contract to build dikes.  *Yearsley*, 309 U.S. at 19.  The Supreme Court held that there can be "no liability on the part of [a] contractor for executing [the government's] will," so long as (1) the contractor's authority to perform was validly conferred by the government, and (2) the contractor did not exceed the authority conferred by its contract. *Id*. at 21.

As a threshold matter, it is unclear whether *Yearsley* even applies in cases such as this one.  Courts have observed that "the context in which [*Yearsley* and *Boyle*] immunities apply is different."  *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL No. 2179, 2016 WL 614690, at *10 n. 6 (E.D. La. Feb. 16, 2016) (citing *Chesney v. Tennessee*

---

34      R. Doc. 206 at 1; R. Doc. 208 at 19-20.

*Valley Auth.*, 782 F. Supp. 2d 570, 581-82 (E.D. Tenn. 2011)).   The Fifth Circuit has pointed out that "[t]he application of the contractor defense in the context of military-equipment manufacturers is an area of law that has [] been arguably distinguished from the general *Yearsley* defense in *Boyle*" and its progeny.   *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 205 (5th Cir. 2009).   "The problem of applying the *Yearsley* defense in the context of the military contractor is the apparent requirement that the contractor possess an actual agency relationship with the government."   *Bynum v. FMC Corp.*, 770 F.2d 556, 564 (5th Cir. 1985).   "The difficulty of establishing a traditional agency relationship with the government makes the derivative sovereign immunity defense ill-suited to many manufacturers of military equipment."   *Id.* (noting that parties that have "close contractual ties with the government" may nevertheless be "independent contractors").

Even if the *Yearsley* doctrine applies to claims brought against military-equipment manufacturers, the Court finds that defendants are not entitled to *Yearsley* immunity.   Defendants contend that they are entitled to immunity because the government authorized and directed their use of asbestos,[35] but this argument relies on a mischaracterization of plaintiff's claims.   Plaintiff does not dispute that the government required defendants

---

[35]    R. Doc. 206 at 12; R. Doc. 208 at 19-20.

to use asbestos, nor does she seek to impose "liability on the part of the contractor[s] for executing [the government's] will" that they do so. *Yearsley*, 309 U.S. at 21. Rather, her claims are based on their failure to take steps to properly protect workers from the asbestos they were directed to use. According to *Yearsley*, immunity applies to acts that were "all authorized and directed by the Government of the United States." *Yearsley*, 309 U.S. at 20 (internal quotation marks omitted). *Yearsley* does not stand for the proposition that a government contractor is immune liability for wrongful acts or omissions that are *not* "authorized and directed" by the government. As discussed in Section III.A, *supra*, defendants have failed to meet their burden of establishing that the government "authorized and directed" their efforts to protect workers, including their issuance of warnings about asbestos-related safety hazards. Therefore, they are not entitled to *Yearsley* immunity.

In their opposition brief, defendants primarily rely on two cases—*In re Deepwater Horizon*, 2016 WL 614690, and *Taylor Energy Company, LLC v. Lutrell*, 3 F.4th 172, 176 (5th Cir. 2021)—to support their argument that they are entitled to immunity under *Yearsley*.[36] Neither case compels that

---

[36]    R. Doc. 206 at 9-11; R. Doc. 208 at 19. In their opposition to plaintiff's supplemental authority brief, defendants expand their argument to discuss cases that address the scope of the government's immunity

conclusion.  In *In re Deepwater Horizon*, the federal government, rather than a contractor, had "ultimate responsibility" for "addressing worker health safety concerns," and OSHA "review[ed] training programs for incoming clean-up workers, help[ed] to determine the appropriate level of [PPE] to be worn by clean-up workers, prepar[ed] safety and health related guidance materials," among other things.  2016 WL 614690, at *9.  That case is distinguishable because the federal government had extensive involvement in deciding on and implementing worker protections. Defendants have not demonstrated that the government came close to having the same degree of involvement in safety decisions at Avondale as it had in *In re Deepwater Horizon*.

*Taylor Energy* is even less factually analogous to the instant case.  In that case, the Coast Guard hired a contractor to assist with oil spill cleanup efforts at the expense of an energy company responsible for the spill.  3 F.4th

---

under the FTCA, with which they contend their own immunity is coterminous.  R. Doc. 255-2 at 7-8 (discussing *Gordon v. Lykes Bros. Steamship Co.*, 835 F.2d 96 (5th Cir. 1988) and *Lively v. United States*, 870 F.2d 296 (5th Cir. 1989)).  These cases stand for the proposition that the government's decisions related to warnings and workplace safety are protected from legal challenge.  *Id.*  Notably, the cases do not address *Yearsley* immunity, which applies to conduct authorized by the government.  As discussed herein, defendants' arguments that their own decisions about workplace safety measures fall under the umbrella of conduct authorized by the government stretches *Yearsley* immunity beyond its doctrinal limits.

at 173-74.  The contractor ultimately charged the energy company over ten times the initial estimate.  *Id.* at 174.  The energy company sued, arguing the contractor undertook activities beyond the scope of the Coast Guard's directive.  *Id.* at 174-75.  In response, the contractor argued it was entitled to *Yearsley* immunity because it acted at the direction of the Coast Guard.  *Id.* at 175.  The Fifth Circuit held that the contractor was entitled to *Yearsley* immunity because even though it retained some discretion on the manner in which it carried out the Coast Guard's directions, it complied with government directives.  *Id.* at 176.

Critically, plaintiff does not seek to impose liability on defendants for complying with government directives.  Rather, her claims that defendants "chose not to warn [their] employees of the dangers of asbestos or put other measures in place to prevent the spread of asbestos" ultimately "boil down to a broad claim against [defendants] for" a "separate act of negligence." *See Adams*, 2022 WL 4016749, at *11 (distinguishing *Taylor Energy* on the grounds that it did not concern immunity for separate acts of negligence committed while fulfilling a government contract); *see also Ackerson*, 589 F.3d at 207 (distinguishing a valid challenge to governmental direction from a "separate act of negligence" by the contractor").  Much like in *Adams,* defendants here cannot claim immunity under *Yearsley* for their alleged

negligent "failure to warn of the dangers of asbestos and failure to prevent the spread of asbestos." *Id.* at *12.

Avondale's argument against this result rests on the same faulty premise as its arguments about *Boyle* immunity: that the government's lack of asbestos-related warnings was an intentional policy decision deserving of protection. Avondale concedes that a contractor is not entitled to immunity for negligence that has "nothing to do with" the "government's directives."[37] But as discussed herein, Avondale's conclusion that its "workplace-safety policies" were "baked into the government's discretionary decisions regarding appropriate workplace-safety precautions"[38] is not supported by the evidence in the record. Accordingly, the Court finds that defendants' decisions about workplace safety measures were not "directed or authorized" by the government.

---

[37]    R. Doc. 255-2 at 10.

[38]    *Id.*

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment.

New Orleans, Louisiana, this __19th__ day of October, 2022.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE