UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LINDA CROSSLAND                                    CIVIL ACTION

VERSUS                                                      NO. 20-3470

HUNTINGTON INGALLS, INC., ET          SECTION "R" (2)
AL


## <u>ORDER AND REASONS</u>

Before the Court are defendant Woodward Design & Build LLC's ("Woodward") motion for summary judgment[1] and motion *in limine* to exclude the expert testimony of Dr. Brent Staggs and Dr. Richard Kradin.[2] Plaintiff and crossclaim-plaintiff Huntington Ingalls, Inc. ("Avondale") both oppose Woodward's motions.[3]  For the following reasons, the Court grants in part and denies in part Woodward's motion for summary judgment,[4] and denies Woodward's motion *in limine*.[5]

---

[1]    R. Doc. 311.
[2]    R. Doc. 310.
[3]    R. Docs. 323, 326, 328, & 329.
[4]    R. Doc. 311.
[5]    R. Doc. 310.

## I.     BACKGROUND

This case arises from plaintiff's alleged exposure to asbestos.  Plaintiff contends that she was exposed to asbestos from several different sources. She asserts that during her childhood, Burmaster Land & Development delivered asbestos-containing concrete to her home that was used for her driveway.[6]  Plaintiff alleges that during the 1950s and 1960s, her father, uncle, and "potentially others" inadvertently brought asbestos fibers into the family home from their work at Avondale's shipyards.[7]  She asserts that in the 1970s, her husband inadvertently carried asbestos fibers into her home from his work at Avondale's shipyards.[8]  Finally, she contends that during the 1970s, 1980s, and potentially the 1990s, her husband inadvertently carried asbestos fibers into her home from his work on various worksites when he was employed by Woodward.[9]  She alleges that her exposure to asbestos dust caused her to develop mesothelioma, with which she was diagnosed in 2020.[10]

---

[6]     R. Doc. 227 ¶ 4.

[7]     *Id.*

[8]     *Id.*

[9]     *Id.*  Plaintiff initially also brought claims based on exposures through her own work at Avondale and through asbestos fibers floating from Avondale into her neighborhood, but she voluntarily dismissed these claims.  R. Doc. 154.

[10]    R. Doc. 1-2 ¶ 8.

Plaintiff filed a petition for damages in the Civil District Court for the Parish of Orleans against dozens of employers, premises owners, contractors, suppliers, manufacturers, and purported professional vendors that were allegedly involved with her asbestos exposures.[11]  In her petition for damages, plaintiff alleged that defendants negligently failed to warn her husband about the hazards of asbestos and failed to provide him "with safe premises in order to protect [plaintiff's] life, health, safety, and welfare."[12] She also brought premises liability claims against the defendants she classifies as employers, premises owners, and contractors,[13] as well as products liability claims against the defendants she classifies as suppliers, manufacturers, and professional vendors.[14]

Defendants Avondale and Albert L. Bossier, an executive officer of Avondale, asserted crossclaims against numerous defendants in which Avondale and Bossier asserted that in the event they are deemed liable to

---

[11]   *Id.* ¶ 2.
[12]   R. Doc. 1-2 ¶ 12.
[13]   *Id.* ¶¶ 16-20.
[14]   *Id.* ¶¶ 21-22.

plaintiff, they are entitled to virile share contributions.[15]  Avondale then removed the action to federal court.[16]

Woodward is a design, engineering, and contractor company that employed plaintiff's husband from 1974 until 2012.  Plaintiff alleges that when Mr. Crossland was employed by Woodward, he worked on multiple construction sites, including industrial worksites at Shell, Gulf Oil, and Monsanto.[17]  Plaintiff brings claims for both negligence and strict liability against Woodward.[18]

Woodward now brings two motions.  First, Woodward moves *in limine* to exclude the testimony of plaintiff's expert witness, Dr. Kradin, and Avondale's expert witness, Dr. Staggs.[19]  Both experts testify to general and specific causation.  Woodward contends that both experts' specific causation opinions are unreliable because they are premised on unreliable facts.[20] Second, Woodward moves for summary judgment on the grounds that plaintiff and Avondale (together, "claimants") have failed to establish that

---

[15]   On February 1, 2023, the Court dismissed Bossier's crossclaims pursuant to Fed. R. Civ. P. 25(a)(1) because Bossier died and no party timely moved for substitution.  R. Doc. 333 at 7.

[16]   R. Doc. 1.

[17]   R. Doc. 227 at 2; R. Doc. 1-2 at 2.

[18]   R. Doc. 1-2 at 6-7.

[19]   R. Doc. 310.

[20]   R. Doc. 310-1 at 1.

plaintiff's husband was exposed to asbestos while he was employed by Woodward and that Woodward's conduct fell below the applicable standard of care.[21]   Woodward also contends that claimants have failed to establish that Woodward is liable under a strict liability theory.[22]   Claimants oppose both motions.

## II.   WOODWARD'S MOTION FOR SUMMARY JUDGMENT

### A.      Legal Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).   "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).   All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or

---

[21]    R. Doc. 311-1.
[22]    *Id.*

affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by

pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

### B. Discussion

#### 1. Strict Liability

"When a case involves long-latency occupational diseases like mesothelioma, the law in effect at the time of the exposure applies." *Adams v. Ethyl Corp.*, 838 F. App'x 822, 829 (5th Cir. 2020). Plaintiff asserts that her husband was exposed to asbestos through his employment for Woodward in the 1970s, 1980s, and potentially also the 1990s.

Until 1996, Louisiana Civil Code article 2317 imposed strict liability for the damage that is caused by "things which we have in our custody."  La. Civ. Code art. 2317.  To establish a claim for strict liability under this version of article 2317, a plaintiff must establish: "(1) a thing which caused the damage was in the care, custody and control of the defendant; (2) the thing had a vice or defect which created an unreasonable risk of harm; and (3) the injuries were caused by this defect."  *Migliori v. Willows Apartments*, 727 So. 2d 1258, 1260 (La. App. 4 Cir. 1999).

In 1996, the Louisiana legislature amended article 2317.  The amended statute provides that:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code art. 2317.1.  Plaintiff does not specifically allege when in the 1990s her husband's employment with Woodward ended, so it is unclear whether the amended statute applies to any alleged exposures in this case.

In any event, both versions of the law require a showing that the defendant had custody over the dangerous product.  *See Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 565 (5th Cir. 2003) ("The first requirement for custodial liability under Louisiana Code articles 2317 and

8

23217.1, is that the 'thing' that caused the injury be in the custody of the defendant."). "Although the owner [of a dangerous product] is presumed to have custody, a non-owner defendant may have custody over the property if [it] exercises direction and control of the thing and derives some benefit from it." *Id.* (internal citation omitted).

In this case, it is undisputed that Woodward did not have custody or control of asbestos-containing products. Claimants contend that during Mr. Crossland's time working at various worksites for Woodward, Mr. Crossland was exposed to asbestos dust from two sources: joint compound and pipe insulation. But claimants do not contend that Woodward had "the right of supervision, direction, and control" or "the right to benefit from" the asbestos-containing products. *Id.* Rather, Woodworth asserts, and claimants do not dispute, that Mr. Crossland's exposure resulted from third-party contractors' construction activities involving those products at the same worksites as Woodward's employees.[23]

The Court thus grants Woodward's motion for summary judgment as to strict liability. *Cf. id.* at *6-7 (granting summary judgment to defendant as to plaintiff's strict liability claim when insulation contractors, rather than

---

[23]    R. Doc. 352 at 1-2.

defendant, exercised custody or control over asbestos-containing insulation at the time of plaintiff's alleged exposure).

### 2.      *Negligence*

Plaintiff also brought a negligence claim against Woodward.   In support of her claim, plaintiff contends that Woodward failed to provide Mr. Crossland "with safe premises in order to protect the life, health, safety, and welfare of" plaintiff.[24]   Under Louisiana law, in an asbestos exposure case, a claimant must show that (1) "he had significant exposure to the product complained of," and that (2) the exposure to the product "was a substantial factor in bringing about his injury." *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1091 (La. 2009) (quoting *Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 948 (La. App. 4 Cir. 1998)).   The plaintiff bears the burden of proof on both elements. *Vodanovich v. A.P. Green Indus., Inc.*, 869 So. 2d 930, 932 (La. App. 4 Cir. 2004).   The same is true of Avondale's burden to prevail on its crossclaim. *See Adams v. Eagle*, No. 21-694, 2022 WL 3347802, at *4 (E.D. La. Aug. 12, 2022).

When there are multiple causes of injury, "a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm." *Adams*

---

24      R. Doc. 1-2 ¶ 12.

*v. Owens-Corning Fiberglas Corp.*, 923 So. 2d 118, 122 (La. App. 1 Cir. 2005) (citing *Vodanovich*, 969 So. 2d at 932). "Because there is a medically demonstrated causal relationship between asbestos exposure and mesothelioma, every non-trivial exposure to asbestos contributes to and constitutes a cause of mesothelioma." *Labarre v. Bienville Auto Parts, Inc.*, No. 21-89, 2022 WL 293250, at *3 (E.D. La. Feb. 1, 2022) (citing *McAskill v. Am. Marine Holding Co.*, 9 So. 3d 264, 268 (La. App. 4 Cir. 2009)). Thus, as the Fifth Circuit has explained, "[e]ven if the plaintiff was only exposed to asbestos for a 'short period for an employer[,] and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma.'" *Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022) (quoting *Rando*, 16 So. 3d at 1091). To defeat an asbestos defendant's motion for summary judgment, a claimant "need only show that a reasonable jury could conclude that it is more likely than not that [plaintiff] inhaled defendant's asbestos fibers, even if there were only 'slight exposures.'" *Id.* at 512 (citing *Held v. Avondale Indus., Inc.*, 672 So. 2d 1106, 1109 (La. App. 4 Cir. 1996)).

Woodward contends that it is entitled to summary judgment because (1) claimants cannot establish that Mr. Crossland was actually exposed to asbestos dust while he worked for Woodward, (2) there is no evidence that

Woodward breached the applicable standard of care, and (3) claimants lack admissible evidence on specific causation.[25]

The Court finds that a reasonable jury could conclude that it is more likely than not that Ms. Crossland inhaled asbestos dust from Mr. Crossland's clothes, and that Mr. Crossland was exposed to such asbestos dust during his work around joint compound and pipe insulation while he was employed by Woodward.

As to joint compound, Mr. Crossland testified that he recalled working around Gold Bond joint compound that, when sanded down, would "get all over the floors."[26]  When the floors were later swept, it would generate "a lot of dust" that "would get all over [his] clothes."[27]  Mr. Crossland testified that joint compound "was a constant encounter on every job that [he] went on," and that he worked in proximity to joint compound "[p]retty much [from] when [he] started with Carl Woodward" in 1974.[28]  Plaintiff's industrial hygiene expert, Susan Raterman, testified that "until at least mid-1977, many brands of patching and joint compounds containing asbestos were available and widely used," and that although Gold Bond stopped manufacturing joint

---

[25]   R. Doc. 311-1 at 1.

[26]   R. Doc. 311-6 at 6-7 (Jack Crossland Tr. 35:18-36:4).

[27]   *Id.*

[28]   *Id.* at 36:9-15.

compound with asbestos in 1975, it did not stop selling it until 1976, two years after Mr. Crossland started working for Woodward.[29]

Woodward contends that Mr. Crossland testified that he was not exposed to joint compound until he was a supervisor/foreman in the 1980s, by which time Gold Bond no longer manufactured joint compound with asbestos.[30]  But the testimony Woodward cites in support of this proposition does not establish that Mr. Crossland was never around joint compound before the 1980s.  Rather, Mr. Crossland testified that he personally mixed and applied joint compound when he was a supervisor,[31] and that before that time, he generally got out of the way of the subcontractors who were doing drywall work.[32]  This testimony is not inconsistent with Mr. Crossland's testimony that he was exposed to dust from drywall cleanup from the time he started work at Woodward in 1974.  Claimants have thus established a genuine dispute of material fact as to whether Mr. Crossland was exposed to asbestos dust from joint compound while he was employed with Woodward.

Claimants have likewise established a fact issue as to whether Mr. Crossland was exposed to asbestos dust from pipe insulation material.  One

---

[29]   R. Doc. 326-10 at 195.
[30]   R. Doc. 311-1 at 10.
[31]   R. Doc. 311-6 at 66-67 (Jack Crossland Tr. 115:21-116:13).
[32]   R. Doc. 311-6 at 51 (Jack Crossland Tr. 95:1-18).

worksite at which Mr. Crossland worked was Monsanto, in Luling, Louisiana. Mr. Crossland testified that the pathways he walked on to get through the plant were five or ten feet away from workers removing insulation.[33]   Mr. Crossland testified that he also got dust on his clothing from insulation removal at the Gulf Oil, Monsanto, and Shell worksites while he was working for Woodward.  That insulation removal generated visible "white powdery-looking stuff" that "was all over the ground."[34]  Mr. Crossland testified that the insulation that was removed in his presence at the Gulf Oil, Monsanto, and Shell worksites looked just like the insulation he saw removed from pipes at Avondale, which no party contests contained asbestos.[35]

Woodward contends that Mr. Crossland could not have been exposed to asbestos from pipe insulation because Monsanto had a policy that prohibited the installation of asbestos-containing insulation by the late 1960s, and that by the 1970s, Monsanto implemented rigorous policies for working with asbestos-containing products.[36]  It asserts that Gulf Oil and Shell stopped installing new asbestos insulation in 1972 and 193, respectively, and that both had strict controls for the removal of asbestos.[37]

---

[33]    R. Doc. 326-9 at 256 (Jack Crossland Tr. 253:1-19).
[34]    R. Doc. 326-9 at 264-65 (Jack Crossland Tr. 261:19-262:20).
[35]    R. Doc. 326-9 at 266 (Jack Crossland Tr. 263:3-15).
[36]    R. Doc. 311-1 at 13.
[37]    R. Doc. 311-1 at 12.

But whether asbestos-containing installation was installed around the time Mr. Crossland worked at the industrial sites is immaterial, as his exposure allegedly resulted from the removal, not the installation, of asbestos-containing insulation.  To the extent Woodward identifies these policies to suggest that the worksites no longer had old asbestos-containing insulation in their pipes when Mr. Crossland worked there, the Louisiana Department of Environmental Quality records show that as recently as 1985, one of Monsanto's facilities was planning the removal of 50,000 linear feet of asbestos-containing insulation.[38]   Further, despite Woodward's representation that Monsanto had rigorous policies for working with asbestos in the 1970s, plaintiff points to the testimony of an insulator who worked at Monsanto from 1977 to 1983 that his insulation removal practices at Monsanto generated visible dust.[39]  Finally, Avondale's causation expert testified that it is more likely than not that old thermal pipe insulation would have contained asbestos at the time Mr. Crossland worked for Woodward.[40] Claimants have thus identified an issue of fact as to whether Mr. Crossland was exposed to asbestos through pipe insulation during his time working for Woodward.  Accordingly, Woodward is not entitled to summary judgment

---

[38]    R. Doc. 326-17 at 2.

[39]    R. Doc. 326-14 at 99-102 (Randy Dufrene Tr. 98:23-101:10).

[40]    R. Doc. 323-3 at 63 (Kradin Tr. 61:2-13).

on the issue of whether plaintiff was exposed to asbestos dust by virtue of her husband's work for Woodward.

Nor is Woodward entitled to summary judgment on the issue of whether it breached its duty to plaintiff. Louisiana courts conduct "a duty-risk analysis to determine whether [negligence] liability exists under the particular facts presented." *Posecai v. Wal-Mart Stores, Inc.*, 752 So. 2d 762, 765 (La. 1999). "Under Louisiana law, the existence of a duty presents a question of law that 'varies depending on the facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff involved." *Burstajn v. United States*, 367 F.3d 485, 489 (5th Cir. 2003). It is well-settled that employers owe a duty not just to their employees, but to their employees' household family members, like plaintiff. *See Zimko v. American Cyanamid*, 905 So. 2d 465, 483 (La. App. 4 Cir. 2005) (employers have a duty to "act reasonably in view of the foreseeable risks of danger to household members of its employees resulting from exposure to asbestos fibers carried home on its employee's clothing, person, or personal effects").

Woodward contends that claimants have failed to establish that Woodward breached its duty because there is no evidence that Woodward knew or should have known that asbestos was present at Woodward's

worksites.[41]  Woodward's primary argument is that the owners of the premises on which Woodward's employees worked never warned Woodward about the presence of asbestos.

Plaintiff points to OSHA, which required employers to take asbestos-related precautions, including air sampling, in industrial plants.  Fed. Reg. Vol. 37, No. 110 (1972).  Plaintiff also invokes Louisiana employment law, which requires employers to:

> furnish and use safety devices and safeguards, [to] adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and [to] do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees.

La. Rev. Stat. § 23:13.  Plaintiff contends, and Woodward does not dispute, that there is no evidence that Woodward abided by these laws, including by inquiring as to the presence of asbestos at worksites or providing protective gear or training to its workers.

As to Woodward's argument that it was never affirmatively warned of the presence of asbestos on construction sites, plaintiff contends that no such warning was necessary, as Mr. Crossland and others testified to the presence

---

of visible dust in the worksites where Woodward's employees worked.[42] Plaintiff also notes that in 1974, the National Safety Council—of which Woodward was a member[43]—publicized recent studies showing "the presence of asbestos fibers in the lungs of persons having no industrial exposure—probably due to fiber presence in the atmosphere near construction sites."[44]

Further, plaintiff's industrial hygiene expert opined that by the 1940s, it was well established in the industrial hygiene literature that people working with or around toxic materials, including asbestos, should not be permitted to take their clothes home to be laundered.[45]  She testified that it was commonplace for some industrial plants to require workers to use separate lockers and work clothes, and to provide on-site showers for workers.[46]  Finally, in 1951, the Walsh-Healey Act addressed the hazards of asbestos and required that employers provide a change of clothing to employees to prevent them from carrying asbestos home.  Although the Walsh-Healey Act applies exclusively to federal contractors, the Louisiana Supreme Court has found that the law evinces "a level of knowledge that

---

[42]   *See, e.g.*, R. Doc. 311-6 at 6-7 (Jack Crossland Tr. 35:18-36:4).

[43]   R. Doc. 326-4.

[44]   R. Doc. 326-3 at 2.

[45]   R. Doc. 326-10 at 200.

[46]   *Id.*

pervaded the industry" and shows "a growing understanding and awareness of a serious problem regarding asbestos." *Rando*, 16 So. 3d at 1086-87.

At a minimum, plaintiff has identified an issue of fact as to whether Woodward knew or should have known of the presence of asbestos on its worksites. *See Labarre*, 2022 WL 293250, at *6 (denying summary judgment where there was an issue of fact as to whether defendant knew or should have known of the presence of asbestos in its products).

The final issue Woodward raises in its motion for summary judgment is whether claimants have admissible expert testimony as to specific causation. As discussed in Section III.B, *infra*, claimants' expert testimony is admissible. Accordingly, the Court denies Woodward's motion for summary judgment as to plaintiff's negligence claim premised on Mr. Crossland's exposure to joint compound and pipe insulation during the course of his employment with Woodward.

The Court grants Woodward's motion as to all other products. Woodward asserts, and claimants do not dispute, that there is no evidence that Mr. Crossland was exposed to asbestos through hardie board, gypcrete, rockwool or mineral wool, fire doors, ceiling tile, or zonolite from his employment as Woodward. Woodward's motion is also granted as to plaintiff's strict liability claim.

19

## III.   WOODWARD'S MOTION *IN LIMINE*

### A.       Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).  Rule 702 provides that an expert witness "qualified . . . by knowledge, skill, experience, training, or education may testify" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 "requires the district court to act as a gatekeeper to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Metrejean v. REC Marine Logistics, LLC*, No. 08-5049, 2009 WL 3062622, at *1 (E.D. La. Sept. 21, 2009) (quoting *Daubert*, 509 U.S. at 589).  This gatekeeping function applies

to all forms of expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

The Court's gatekeeping function consists of a two-part inquiry into reliability and relevance. First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The reliability inquiry requires the Court to assess whether the expert's reasoning and methodology underlying the testimony are valid. *See Daubert*, 509 U.S. at 593. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* at 590. "[F]undamentally unsupported" opinions "offer[] no expert assistance to the [trier of fact]" and should be excluded. *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005). The Court may consider several nonexclusive factors in determining reliability, including: (1) whether the technique has been tested, (2) whether the technique has been subject to peer review and publication, (3) the technique's potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004). The

Supreme Court has emphasized that these factors "do not constitute a 'definitive checklist or test.'" *Kumho*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 593).   Rather, courts "have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

"The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (internal quotation marks omitted). "Where the expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).   Further, the Supreme Court has explained that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146.   Rather, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

Second, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case, and whether it will thereby assist the trier of fact to understand the evidence.   In other words, it must determine

whether it is relevant. *See Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02] (1988)).

A district court's gatekeeper function does not replace the traditional adversary system or the role of the jury within this system. *See id.* at 596. As noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* Thus, in determining the admissibility of expert testimony, the district court must accord the proper deference to "the jury's role as the proper arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996).

### B.      Discussion

Woodward's motion *in limine* addresses the admissibility of plaintiff's causation expert, Dr. Kradin, and Avondale's causation expert, Dr. Staggs. Dr. Staggs is a pathologist,[47] and Dr. Kradin is a pulmonologist and

---

[47]      R. Doc. 328-4 at 1.

pathologist who practiced for decades at Massachusetts General Hospital with a focus in asbestos diseases.[48]  He also taught at Harvard Medical School and has authorized hundreds of articles on asbestos diseases.[49]

Each expert rendered opinions on general and specific causation. "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury." *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).  Both experts concluded that plaintiff's mesothelioma was caused by her cumulative bystander, para-occupational (domicile), and environmental exposures to asbestos, including her exposure to asbestos dust from her husband's work at Woodward.[50]

Woodward contends that both experts' specific causation opinions are unreliable.  The thrust of Woodward's argument is that rather than personally assessing whether the products to which Mr. Crossland was exposed contained asbestos, both experts assumed that he was exposed based on his testimony about the products he worked with and the dust he

---

[48]    R. Doc. 323-1.

[49]    *Id.*

[50]    R. Doc. 323-2 at 21 (Kradin Report); R. Doc. 328-6 at 17-18 (Staggs Report).

encountered.  Woodward contends that because there is no evidence that Mr. Crossland was exposed to asbestos while working for Woodward, the assumptions on which the experts rely are flawed, rendering their opinions unreliable under Federal Rule of Evidence 702.

Under Rule 702, an expert may testify only if his "testimony is based on sufficient facts or data." Fed. R. Evid. 702(b).  The facts, data, and sources used in an expert's opinion are generally considered by the jury in weighing the evidence, but "in some cases the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion." *Jacked Up, LLC v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (internal quotation marks omitted).  "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate.  At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, LLC*, 547 F. App'x 513, 515 (5th Cir. 2013).

Here, neither expert relied on "completely unsubstantiated factual assertions." *Id.*  Rather, the experts based their opinions about the extent of plaintiff's exposure to asbestos on the testimony of plaintiff, Mr. Crossland, and Mr. Crossland's brothers in light of plaintiff's medical history and

medical literature regarding the presence of asbestos in certain products and the levels of exposure necessary to cause harm.[51]   Experts are permitted to rely on testimony about exposures from fact witnesses.  *See Curtis v. M&S Petrol., Inc.*, 174 F.3d 661, 671 (5th Cir. 1999) (upholding admissibility of expert's opinion that relied, among other things, on testimony about the work practices at the workplace at issue, including testimony that the witnesses became soaked in the relevant toxic materials when they performed certain tasks); *see also Cortez v. Lamorak Ins. Co.*, No. 20-2389, R. Doc. 1173 (E.D. La. Aug. 23, 2022) (holding that expert report premised on, among other things, testimony from fact witnesses regarding exposures to asbestos admissible under Rule 702).  Indeed, experts may even rely on hypotheticals, so long as they are supported by the evidence.  *U.S. Alliance Grp., Inc. v. Cardtronics USA, Inc.*, 2022 WL 17622362, at *4 (E.D. La. Dec. 13, 2022).

Woodward contends that the testimony on which the experts relied is unreliable because it is contradicted by other evidence that suggests Mr. Crossland was not exposed to asbestos while he was employed by Woodward. In support of its argument, Woodward largely reiterates the arguments it

---

[51]   *See* R. Doc. 323-2 at 10-15, 20-22 (Kradin Report); R. Doc. 232-3 at 61-62 (Kradin Tr. 58:19-59:6); R. Doc. 328-6 at 9-10, 11-17 (Staggs Report).

advances in its motion for summary judgment regarding the sufficiency of the evidence. But the Court has already determined that claimants identified issues of fact as to Mr. Crossland's exposure to asbestos through his employment at Woodward. *See* Section II.B, *supra*. At trial, Woodward may confront claimants' experts with this evidence on cross-examination, from which the jury may weigh the credibility of the experts' opinions. *See Daubert*, 709 U.S. at 596 ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see also Garris v. Pelonis Appliances, Inc.*, No. 10-1569, 2014 WL 1330063 (E.D. La. Apr. 3, 2014) ("Jurors are quite capable of understanding how to weigh expert evidence that may be based on assumptions contrary to the other trial evidence presented to the jury."). Woodward's motion *in limine* is thus denied.

**IV.      CONCLUSION**

For the foregoing reasons, Woodward's motion for summary judgment is GRANTED IN PART and DENIED IN PART.   Woodward's motion *in limine* is DENIED.


New Orleans, Louisiana, this  __17th__  day of February, 2023.


                                _____
                                    SARAH S. VANCE
                            UNITED STATES DISTRICT JUDGE